## ASHTON v STATE

Ohio Appeals, 3rd Dist, Allen Co
No 530. Decided March 19, 1930

Henderson & Durbin, Lima, for Ashton.
A. M. Rogers, Lima, for State.

JUSTICE, J.

The first proposition is easily disposed of. In **Breese v. State, 12 OS. 146,** our Supreme Court held:

"A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

In the case at bar, a sharp conflict exists in the oral testimony upon the issue of the fitness of fluid extract of ginger for use for beverage purposes. Different minds, in weighing it, might readily reach different conclusions. True, the United States Pharmacopoia classifies said fluid as unfit for beverage purposes, but it does not classify said fluid as unfit for use for beverage purposes. Furthermore, such classification is not conclusive, and manifestly the trial judge, who was the trier of the fact, was not bound by it.

We have carefully read the entire record and are of the opinion that the finding of the trial court is not manifestly against the weight of the evidence in this respect.. Our answer, therefore, to the first question is in the affirmative.

Turning now to the second proposition. It is undoubtedly true that the mere possession for non-beverage purposes, of the fluid extract of ginger, containing one half of one per cent or more of alcohol by volume, does not in and of itself, constitute a violation of 6212-13 et seq. GC, commonly known as the Crabbe Act. We quote the pertinent portion of 6212-15, GC. "Liquor, and liquor preparations and compounds for non-beverage purposes . . . may be . . . possessed . . . ., but only in accordance with the provisions of Title 2 of the Act of Congress known as 'National Prohibition Act' passed October 28, 1919." But when such possession is coupled with an intent to use said fluid in violation of law, then it is certainly true that such possession does fall under the ban of the Crabbe Act. To hold otherwise would be to destory the force and effect of certain provisions of 6212-16 GC, which, so far as pertinent here, reads as follows:

"It shall be unlawful to have or possess any liquor . . . intended for use in violation of law."

To like import is the pronouncement in **Shy v. State of Ohio, 17 Ohio Appellate Report, 147.**

Section 6212-14, GC, so far as pertains here, provides:

"In the interpretation of this act the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include , . . any liquid or compound whether or not same is medicated, proprietary, or patented, and by whatever name called, containing one half of one per cent or more of alcohol by volume which is fit for use for beverage purposes. . . ."

Section 6212-15, GC, so far as pertains here, provides:

"No person shall, after the passage of this act, . . . possess . . . any intoxicating liquor except as authorized in this act. .. . . ."

Obviously, the fluid extract of ginger described in the affidavit is "liquor" and "intoxicating liquor" within the meaning of the Crabbe Act.

In the instant case there is abundant evidence tending to prove that Ashton had the fluid extract of ginger in his possession for the purpose fo selling it as a beverage. He was not a grocer in any sense of that word; his stock of merchandise, if such it may be called, belies such a thought. The surrounding circumstances speak louder than words and plainly spell "bootlegger." Our answer to the second question, obviously, is in the affirmative.

Upon the whole case we are unanimously of the opinion that Ashton had a fair trial.

Holding these views, it follows that the judgments of the court below should be affirmed.

**Before Judges Hughes, Justice & Crow.**